JOYNER v. HOFFMAN.

CONTRACT.—FINDING OF FACT that deceased party to contract had no right to rescind it under its terms because of ill feeling between parties thereto, reversed.

Before GAGE, J., Barnwell, April, 1900.    Reversed.

Action for specific performance by D. F. Joyner and Nola O. Joyner against Fannie Hoffman, J. R. Mack *et al.* From Circuit decree in favor of plaintiffs, defendants appeal.

*Messrs. Hendersons & Bellinger, Townsend & O'Bannon,* for appellants. *Messrs. Hendersons* and *W. H. Townsend* cite: *As to making out contract:* 25 Penn. St., 549; L.

R., 8 Ch. Div., 351; 7 App. Div. Sup. Ct. R., 166; 98 Fed. R., 781; 73 Id., 619; 6 Eng. Rul. Ca., 155; 4 App. Ca., 311; 44 Chan. Div., 623.

Messrs. *B. T. Rice* and *James F. Izlar, contra,* cite: *As to law of contracts to dispose of property by will:* 1 DeS. Eq., 116, 366; 3 DeS. Eq., 190; 4 DeS. Eq., 185; 3 DeS., 514; 12 Pa. Reps., 27; 41 N. Y., 450; 62 Mo., 101. *If proposition is acted upon, no express assent is needed:* 4 Ves., 504; 3 DeS., 514; 17 S. C., 477; 1 Hill Ch., 154; 22 S. C., 474; 100 U. S., 578. *Letter of Mrs. Willis; moving of plaintiffs to plantation; execution of purported will, with maintenance of old people; make out the contract:* 75 N. Y., 574; 14 Johns., 260; 6 N. Y., 369; 91 N. Y., 392. *As to determination of findings of fact decided different ways by master and Circuit Judge, this Court seems to have laid down two rules—one laid down in* 26 S. C., 446, *beginning with* 6 S. C., 140, *and ending with* 20 S. C., 296, *or rule laid down in* 16 S. C., 481; 26 S. C., 250; 42 S. C., 86; 44 S. C., 437; 57 S. C., 530.

March 19, 1901. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts of this case are thus set out in the decree of his Honor, the Circuit Judge: "This is an action by plaintiffs against the defendants, as heirs at law of one Rachel Willis; and its purpose is to compel the defendants to specifically perform a contract alleged to have been made betwixt plaintiffs and Rachel Willis. The cause was referred to the master, he reported on all the issues, and the matter now comes before me on exceptions by the plaintiffs. The argument before me was elaborate, and left me in grave doubt about the issues of fact. The issues of law are free from difficulty.

"The subject of the action is 162 acres of land in Barnwell County, and particularly described in the complaint. The allegations of the complaint are that Rachel Willis, in

34—59

her lifetime, during the latter part of 1894, and the first part of 1895, agreed with the plaintiffs, that if they would live with her and her husband, Michael, on the said land, and care for them, in that event Rachel would at her death and that of Michael, give the said lands to plaintiffs; that plaintiffs moved upon the land pursuant to that agreement, and performed their part of the contract for the years 1895 and 1896; that Rachel left a paper writing, purporting to be her last will, by which she undertook to devise the said lands to Michael for life, and then to plaintiffs forever. The defendants deny the alleged contract; they allege plaintiffs did live on the lands in 1895 and 1896, but under a contract betwixt them and Rachel, which either party had a right to terminate on proper notice; that Rachel elected to terminate the relationship at the end of 1896; that plaintiffs forfeited all their rights under the contract by the ill treatment of Rachel, that defendants are tenants in common of the premises, and entitled to partition thereof, amongst themselves and the plaintiff, Nola, as heirs at law of Rachel, who died intestate. These are the issues of fact. Michael died in 1896, and Rachel in 1899. Rachel died intestate, and the plaintiff, Nola, and the defendants are her heirs at law, except Elizabeth Sharpe, who died since this action was begun, and whose sole heir, W. A. Sharpe, has been substituted in her stead. Rachel left a paper writing, purporting to be her last will and testament, dated 5th January, 1895, and thereby undertook to devise the said lands to Michael for his life, and then to the plaintiffs in fee. The paper is in apt language, free from ambiguity, and is in form and substance a will, except its execution is evidenced by two witnesses, instead of three. As a will, therefore, it is of no effect. This paper was in the possession of plaintiffs at the death of Rachel. Upon this paper, upon the occupation of the land by plaintiffs in 1895 and 1896, and their maintenance of Michael and Rachel, and upon a letter by Rachel to W. and Mrs. Garvin, addressed as 'My dear Sister & Bro.,' dated 13th November, 1894, the plaintiffs rest their case.

"On the other hand, the defendants contend that the letter of 13th November, 1894, was not definite in its terms of proposal by Rachel to plaintiffs; that, indeed, it evidences no contract betwixt the parties.  The defendants contend, further, that there was a written contract betwixt Rachel and plaintiffs, signed concurrently with the will, which contract gave each party thereto the option to end the family arrangement; that Rachel chose to end it by her letter of 16th November, 1896, did end it, and plaintiffs agreed thereto * * * The testimony utterly failed to convict the Joyners of any neglect to the old people.  They performed their obligation; and had the old folks died while the Joyners were on the premises, there would be no reasonable doubt of the equity.  How is the case altered by their removal from the premises?  They did not leave voluntarily; Rachel ordered them to quit, in the letter of 16th November, 1896.  That letter assigned the reason for the old lady's conduct, 'Nola and Elizabeth (Nola's mother) both hurt my feelings so about Mr. Willis *since* his death, that I can never get over it as long as I live;' again, 'I was *told* I ought to have put Nola out of my house, as she said what she did about Mr. Willis, etc.'  Rachel had no right to thus break the contract, and by doing so she could impair no right thereunder which the plaintiffs had.  The plaintiffs left, but there is no evidence tending to show that they acquiesced or waived any of their rights under the contract.  And unless they did concur in what Rachel wrongfully did, there is not any reason to hold them bound by Rachel's action.

"I am, therefore, of the opinion that the plaintiffs are entitled to have the lands described in the complaint specifically conveyed to them, and it is so ordered and decreed."

The master in his report says: "This letter (hereinbefore mentioned) refers also to a letter that the said Rachel Willis had received from the plaintiff, Mrs. Joyner, and to one written by the said Rachel Willis to Mr. Joyner; and Mrs. Joyner in her testimony admitted that other letters had passed between them, yet for some reason not stated these letters were

not introduced in evidence.    Soon after the receipt of the
above letters, it appears that the plaintiffs went over to see
Mr. and Mrs. Willis, at their home near Elko, in reference
to the proposition that Mrs. Willis had made to them.    As
to what passed between the plaintiffs and the Willises upon
this visit, we are not told by the plaintiffs, except that they
consented to live with them.    Upon their return to Norths
from the Willises, the plaintiffs, after disposing of the inter-
est of Mrs. Joyner in a small millinery business, on the 1st
day of January, 1895, moved over to the home and planta-
tion of Mrs. Willis, near Elko, and established their resi-
dence with her and her said husband, Michael Willis.    The
plaintiffs contend that the aforesaid letter of Mrs. Rachel
Willis addressed to the Garvins, in connection with the
paper hereinafter described, purporting to be the last will
and testament of the said Rachel Willis, and their acceptance
of the offer contained in said letter, constituted the contract,
and all the written evidence of the same between the said
plaintiffs and Mrs. Willis.    After carefully weighing and
analyzing the testimony of each one of the witnesses, the
master is fully convinced that the contract between the
plaintiffs and Mrs. Willis was reduced to writing, and was
signed by the said plaintiffs and the said Rachel Willis on or
about the 5th day of January, 1895, and that R. M. Willis
and J. J. Mims were the subscribing witnesses to the same,
and that in substance its terms and conditions were as fol-
lows : That the plaintiffs were to live with and take care of
the said Rachel Willis and her husband, Michael Willis,
during their lifetime, and that in consideration of said ser-
vices, the said plaintiffs were to be allowed to cultivate and
receive the crops grown upon the land mentioned and de-
scribed in the complaint, and that the said Rachel Willis was
to devise all of her property to the said plaintiffs, reserving
a life estate in the same to herself and her said husband.
Said contract also contained the following condition : That
if either party to the same became dissatisfied, that upon

giving notice to the other at the end of a year, that said contract was to terminate and become null and void."

The master states, at length, the facts upon which he bases this finding, which was overruled by the Circuit Judge, who reviewed the testimony and stated his reasons for reversing the report of the master.

The main question in the case arises out of the issues as to the terms of the contract between Mrs. Willis and the plaintiffs. That portion of the letter written by Mrs. Willis and addressed to "My dear Sister and Bro.," which relate to this question, is as follows: "tell Nola that I ancered hire letter to Mr. Joiner & he *will tell hir all about it* & tha must decid what tha will doo tell hir that I did not tell him but will tell hir that if tha will live with us & tak caire of us I will give them all I have when we air ded all I have is there *all the rest Mr. Joiner will tell hir.* Please decid and write soon I think we will move next week that is our things if tha cant comply with our request we wont fall out about it we will be glad if tha can doo it so we can live at home" (italics ours). This letter shows upon its face that it was not intended to embody all the terms of the proposed agreement. It shows that Mrs. Joyner had written to Mrs. Willis and Mrs. Willis had written to Mr. Joyner in regard to the matter mentioned in the said letter. The master says: "Mrs. Joyner, in her testimony, admitted that other letters had passed between them, yet, for some reason not stated, these letters were not introduced in evidence." Shortly after the receipt of the said letter the plaintiffs went to see Mrs. Willis in reference to the proposition that had been made to them. They did not accept the terms mentioned in the letter from which we have quoted; for, in pursuance of the contract entered into between the parties, the plaintiffs took charge of the *plantation,* planted, cultivated and gathered the crops grown thereon, and retained as their *own* whatever was left, after supporting the household, although the *letter* gave them no such authority. They either derived this authority from the letters which were received but not produced, or from the agree-

ment entered into when they went to see Mrs. Willis, shortly before taking possession of the plantation.

Having reached the conclusion that the entire agreement is not set forth in said letter, we will next determine what was the agreement as understood and acted upon by the parties. Mrs. Willis wrote to Mr. Joyner the following letter: "Gaffney, S. C., Nov. 16th, 1896. Mr. D. F. Joyner, Elko, S. C. Sir: I write to ask you to turn the money you owe me over to Tommie Willis and for Nora to leave my gold button with him also. I want you to leave as many cotton seed there as you found when you went there and all the compost also. I do not know when I will go home but when I do I want possession of my place, for I never expect to live in the house with you all again as long as I live. When I go home I will carry my own provisions, and I expect to keep house to myself. Nola and Elizabeth both hurt my feelings so about Mr. Willis since his death that I can never get over it as long as I live, and I shall be glad never to see any of you again. I was told that I ought to have put Nola out of my house as soon as she said what she did about Mr. Willis. Why did she not say as much to him while he lived? But for her to tell sich a thing on him after he was dead is a little more than I can bear. I want you to write me and let me know when I can get possession of my place. I want it just as soon as possible. I have written Tommie Willis that I would write you to pay him the money you owe me and for him to give you a receipt for it. This is the fifth time that I have warned you that I want possession of my place the first of January. Any contract that may have existed between us I now hold as null and void. When you leave be sure to leave all my things there and if I am not at home, leave my keys with Tommie. I shall keep a copy of this letter. Expecting an early reply I am as ever, Rachel Willis." This shows very unequivocally that Mrs. Willis understood the contract as giving her the right to terminate it, upon notice, at the end of the year. This also seems to have been the understanding of the plaintiffs, for they acted

in pursuance of said notice, without complaint, during Mrs. Willis' lifetime. They knew what Mrs. Willis thought of the contract; and their quiet acquiescence until after her death, corroborates statements made by the plaintiffs to other persons, that if either of the contracting parties became dissatisfied, they had the right to terminate the contract. If the plaintiffs had objected to the construction placed upon the contract by Mrs. Willis during her lifetime, much hidden light could have been shed upon the case. Whatever may have been the other provisions of the contract, and whether it was in writing or by parol, we are satisfied that Mrs. Willis had the power to terminate it upon notice at the end of the year, if she became dissatisfied, and that she did so terminate it. This view renders unnecessary the consideration of the other questions raised by the exceptions.

This Court does not dismiss the complaint; for the reason that the rights of the heirs at law of Mrs. Willis may be disposed of in this case by a sale of the land and a division of the proceeds among the parties in interest.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for further proceedings.